We have five cases this morning, three patent cases, two from the DTAB, one from a district court, a case from the claims court, and a veterans case which will be submitted in the briefs and not be argued. We will hear the first three cases, and then the panel will briefly adjourn and return after a slight recess. Our first case is LG Electronics v. Core Wireless, 2017, 2028, and 2029, Mr. Moss. May it please the Court. The Board in this case applied a construction of displays a limited list, and that limitation that reads the term and the notion of display out of the claim entirely. That fundamental error dictated its approach to the evidence and the outcome of the case, and accordingly, our view is the Court should vacate and remand for the Board to consider it under the proper construction, which would include the display limitation. According to the Board, any functionality or data can be part of a limited list as long as it's within the window, regardless of whether or not it's displayed on the screen of the device that's there. The claims themselves, however, make clear that the limited list must be displayed. So the way it is is that the application summary window must be configured to be displayed on the screen, and that application summary window displays the limited list. The specification is consistent with that. It says that once the application... Can you help clarify this? I thought at least in one form of relatively common parlance, we would talk about a window, not all of whose contents is visible at exactly the same time, in particular. Scrolling doesn't change the window, but it's still... All the material is still within the window, isn't it? I guess I took what the Board could be doing here is saying that's kind of what's going on here. There may be something in the same window, and that is displayed, but is not displayed at the same time as everything else in the window. Well, there are going to be disputes about what constitutes a window, and there are expert testimonies back and forth, and that may be a way of thinking about it, but at least in terms of the claim itself, it's talking about display, not potentially displayed or partially displayed. It says the application summary window will display a limited list, so the limited list is inherently tied to what is displayed on the screen, and that's consistent with the entire purpose of the invention itself. It seems to me you could use the language, but the claims use the language of window, and so everything that's in the window is displayed, but at different times, and I thought what the Board was saying was if you look at the sum total of what's in the window, including stuff you might have to scroll down to see, while then eliminating from the screen stuff that's higher in the window, but no longer displayed, everything does get displayed, but that there's still something, and if you think of it that way, then you fail to prove that in the prior art, something is missing, right? There's something, some function or data that's missing, so that the full window, including the parts you have to get to by scrolling, is not proved to have been limited in the prior art. And that may be what the Board was thinking, but that's inconsistent with the way that the patent lays out what the claim does. That is, the notion of potentially displayed or partially displayed is nowhere in there. It is that it is displayed. For instance, in column three of the O2O patent, it says that once the application summary window is launched, the core data or functionality is displayed, and not partially displayed or accessed. And as I was saying, the entire purpose of this supposed invention was that you wouldn't have to go down through layers and layers and layers. You would have an immediate list that would pop up that you could then access certain functionality of the phone without having to dig deeper. That was a problem that the specification identified in the prior art, that you'd have to go hunting and pecking through a variety of different windows and layers. And so the idea that it's not displayed immediately is inconsistent with that entire thing. And so the specification teaches that it has to be displayed and that the limited list is confined to what is displayed on the screen itself. But everything in the specification says that it is tied to the summary window, right? And so why doesn't that, consistent with what we said in the core wireless decision from the district court that was appealed from the district court, why doesn't that refute the very point that you're making? Well, I'll grant you that the better reading is that the summary window should be tied to the screen itself. Claim 16 of the 020 patent is even clearer to that to say that the summary window is on the display screen or displayed on the screen itself. But with that aside, regardless of how you think of the window and how far it extends and whether or not it has multiple layers to it, the claim language is still that the application summary window is displaying the limited list. That is, the limited list is tied to what is on the screen itself and displayed. So, and with respect to the prior decision, there was no construction issue in that case. No one was disputing or had an issue with the construction of the claim itself. That one was purely a sufficiency of the evidence issue. But this, what we have here is you have the specification and claim language that clearly is tying the limited list and the core functionality to being displayed. And that is immediately accessible. The figures 1 through 3 of the 020 patent are what the patent says are the limited list. And all of them are appearing on a single screen. All that limit, all the functionality and data are right there and accessible. And that's entirely consistent with what the patent was trying to do. That is to put everything immediately on the screen for the user to access out of the gate. And you think that that reading is sufficiently strong that it governs even under a BRI standard? Yes. Cases like Dell and the rest where you can't just eliminate a limitation out of the claim itself. I mean, the board's analysis doesn't account for the display aspect of the limited list in and of itself. So, and it's clear that Blanchard, in fact, doesn't provide all the functionality or data on the screen. There is, as you can see through, if you scroll down, there is additional functionality or data down further below that's not displayed. And so, it matters to the ultimate outcome of the board's determination and how it viewed this entire issue, including the evidence that went to us. Unless there are any further questions, I'll reserve the floor. Can I say, you filed a letter fairly recently. Yes. Invoking SAS Institute, I'm told is the way to pronounce it. Invoking SAS Institute and asking for remand on the Schnarl ground. Did I pronounce that correctly? I believe so. Okay. But it was a kind of conditional request. And there was a to the extent that and then a parenthesis saying, and to the extent that. Can you just clarify what you're asking? This entire thing arises in a unique situation in that LG asked for the board to institute on both Schnarl and on Blanchard. Instituted only on Blanchard. But for Apple, it instituted on Schnarl. Well, Schnarl and combination. Fair enough. That might be actually a rather significant point, since in the other case, the board said, we need Aberg and we reject the argument on Schnarl alone, right? If I'm remembering right. Right. But it's still instituted at least in part on the same grounds that we asked for. And so, in terms of the issues are currently decided by the board, at least in some context and before the court. Why isn't your request untimely? SAS was decided a long time ago. I mean, at the time, we said that people who then came in and immediately raised the SAS issue were justified in asking for that. But with all this passage of time, how can you wait till a couple days before argument to raise an SAS issue? Again, in the context of the case was already before the court, the board had already at least made a determination with that. It didn't, it seemed a better course to allow the court to pass upon the issues that are currently before it. We just wanted to make sure that we raised the issue and made clear our position that if there are other proceedings, and my understanding is the board on its own raises this issue and will address the issue if there is a remand. Do I understand the timing correctly? Your reply brief was, I think, April 14th and April 24th was SAS instituted in the Supreme Court. So you haven't had any subsequent, any intervening filings to make? No. Thank you, counsel. We'll save the rest of your time for rebuttal if you need it. Mr. Wang. Thank you, Your Honor. May it please the court, the PTAB's determination that all of the challenged claims are not unpatentable under the Blanchard patent should be affirmed. First, the board's claim construction was appropriate and correct for the limited list requirement. And second, substantial evidence supports the board's determination that a limited list was not disclosed in Blanchard. Even if we agree with you, both because of the claim construction issue and because the board is correct that the petitions and the presentations approved were pretty weak in this case by LG, what happens if, in the next case, where the board is asking us to affirm, PTO would be asking us to affirm the decision to knock out these same claims, or most of these same claims. So if we agree on Apple, doesn't LG benefit from that? Your Honor, I think I'd agree with you. We have to win on both appeals. And if you win on the second appeal, what's left of this appeal? Then we would go back to the district court, where it stayed pending the damages retrial. OK, but don't you have a Fresenius problem now? Your Honor, I'm sorry, could you clarify what you mean by that? So our decision in Fresenius said that even if we decided the underlying merits of the case, that if the patent gets knocked out at the PTAB, then those claims are no longer viable claims that can be asserted. Your Honor, I apologize, I misunderstood you. So if you do uphold what the PTAB decided in the Apple IPR, then I agree that the cases are finished, and there is no damages retrial in the conversant LG case of the district court. To the extent that the claims are identical in the two cases. That's right. And they aren't exactly overlapping, but I'm fairly certain that where it doesn't overlap, those are non-asserted claims in the LG case. So what I meant earlier was that we do have to win on both appeals, in the sense that we need the court to affirm the PTAB's decision in this current appeal, and reverse and remand in the Apple appeal, which my friend will be arguing right after me. OK. The board's. Your own IPR doesn't involve some of the claims that are in the case against you? What I meant, Your Honor, is that LG and Apple challenged different claims in the IPR. A complete victory in the Apple case for Apple would still leave some claims here. They would, but I don't believe that those claims were asserted in the district court litigation. So I think it would be a pure victory. The district court litigation only asserted a couple of dependent claims, right? That's right, Your Honor. And those overlap with the dependent claims challenged by Apple. That's right. So the board's claim construction was certainly appropriate. LG complains about that in this current appeal. They complain that they didn't have an opportunity to respond to the board's claim construction. Now, in any IPR petition, it is the requirement of the petitioner to lay out how the challenge claims were construed. They never argued what they argue now on appeal. That limited list is somehow constrained by the device's screen size. What they said was that it should be construed according to plain meaning. What they meant by that was that it is limited by the number of functions and data. They did not mean that it was constrained by the size of the particular device's screen. That only comes up in this current appeal. And that is abundantly clear about what they expected the term to mean because their expert in deposition testified twice that the term meant that limited lists meant fewer than all the functions. During the first deposition, in appendix 2547, he admitted that. He made that even more clear in his second deposition in appendix 3211, where he testified, I thought everybody had interpreted the limited list of functions to mean that you wouldn't have all of the functions available. So, Mr. Morris, I think, this morning in his briefs has stressed not so much that the list has to be fewer than all the functions, but that the list that you're talking about has to be what's on a contemporaneously visible display screen. Your Honor, that's inconsistent with the claim language, with the intrinsic record, and with the prosecution history. The board's construction was entirely accurate. In fact, it is the construction that the parties actually adopted and used throughout the IPR proceedings. There's nothing in the claims that restrict the limited list to what is shown on a particular device's screen. There are specific embodiments in the patent that discuss... But I think LG has very much stressed that the claim uses the word not only window, but also display. Why does that allow for your, and I think the board's somewhat broader understanding? Your Honor, the claims refer to an application summary window that does display the limited list of at least one function from the first application. And your earlier question was exactly right, Your Honor. You can have a window that displays a limited list, even though it requires scrolling down to reveal the additional functions. And that is entirely contemplated by the patent. When you look at the specific embodiments discussed in the patent, it talks about, for instance... What do you want me to look at? Sure, Your Honor. If you go to appendix 40 at column 5, beginning at line 5, it refers to a contacts manager application that displays phone numbers and email addresses, or that lists names of the people stored in the device. If you then go to the embodiment at appendix 39 at column 4, line 51, it talks about the Bluetooth application, where the summary window lists the other Bluetooth devices in the vicinity. What those two embodiments envision is a list that does, that is not limited by its size. In fact, LG even concedes that. At their gray brief at 910, they concede that the limited list can vary in size. Now, there's also the scrolling embodiment. Yes, yes. I mean, you could have varying size from this to this. Exactly. But you have this to this. So the scrolling embodiment is very important for this particular issue. And the patent, in numerous instances, talks about scrolling within the window to display these functions. At appendix 39 at column 3 at line 45, a highlight is available in the app snapshot dropdown, which may be scrolled in order to select a required item. You see similar references to scrolling at appendix 39 at column 4, beginning at line 6, and at appendix 39 at column 4, beginning at line 12. And if you look at two dependent claims, it'll really drive home the point, Your Honor. If you look at dependent claims 14 and 15, which you can find at appendix 40, claim 14 says, said limited list displays only functions in said subset and thus cannot be scrolled to reveal additional functions outside of the subset. What that's telling us is that for that dependent claim, you cannot scroll to reveal additional functions, but it's just that dependent claim. By implication, the other claims, you can then scroll to reveal additional functions exactly how you imagine a normal window with additional functions listed below. You use the up or down keys to get to those functions and you scroll to reveal them. And that is an application summary window displaying the limited list. Rather than impose any sort of artificial limit on the list based on screen size, as LG would ask the court to do, the patent says the exact opposite. It says that any manner of presentation will work. And if you look at appendix 39 at column 3, beginning at line 62, that's exactly what the patent says. Any manner of presenting the common functions offered within an application and or data stored in that application will constitute a window. And it doesn't make sense to limit the list according to a particular screen's size. The patent expressly says, while it may be great for mobile telephones, the invention works just as well for laptops and for desktop PCs. And in those, the screen's obviously bigger and you could see the list. They didn't intend to limit a limited list by a particular device's screen size. They bring up this claim differentiation argument, so I want to briefly address that. It doesn't work in this particular instance for them for many reasons. If you compare claim one to claim three, of course claim one can be a subset of all the functions, but it can also be a subset of less than all the functions. And that's consistent with the computer program code of this particular invention, which says that the user or the system designer can define and set out these limited lists in advance. So it's meant to have that express flexibility. But even if you were to say that claim one is coextensive with the dependent claim three, this is one of those instances where the dependent claim tail shouldn't wag the independent claim dog. And the reason for that is because, of course a limited list is going to be a subset of something, and all the parties agree to that. In fact, LG conceded that during prosecution, the patentee defined, open quote, the limited list in claim one as a subset of all of the functions offered by a given application. And you could see that in LG's blue brief at page 31 at note eight. There's other prosecution history statements that confirm that, that the patentee was equating a limited list with a subset. So this is an instance where the patentee was very clear that it understood that the limited list is in fact a subset. In fact, LG didn't even dispute that in the IPR proceedings. Its expert at appendix 3210 was asked, well you understand the O2O patent is designed to take functions that are available within an application and bring them to the application summary window, correct? The expert's answer, as long as it's a subset. And again, in LG's blue brief at page 14, you could see that in discussing the limited list, they equate the limited list with a subset. So LG's reliance on claim differentiation is simply misplaced in this instance. In fact, it violates its own argument because they're trying to suggest that the claim, the independent claim, is somehow narrower than the dependent claim in that they're saying that claim one requires a limitation based on the device's screen size. And if they're not saying that, then their own claim differentiation argument works against them because then you have claim one and claim 13, both limited by a device's screen size. So it just doesn't apply in this instance. Can I ask you about, well maybe two related things, but suppose, that is the premise of this question, is that we would affirm the board on what it decided on Blanchard. Suppose, again, the premise of this question, that we would affirm the board in the Apple case. What is your position about a remand for consideration of Schnarl? Your Honor, I don't think a remand based on Schnarl in this instance is appropriate for many reasons. One, I think getting to the question you're really getting at is that it would really be futile. The board, in dealing with the Apple IPR, already determined that Schnarl on his own was insufficient. Sure, maybe LG makes a different argument, so maybe they have that argument. But back to Judge O'Malley's comment, it is way untimely. The SAS decision came out in April of 2018. They just submitted their notice of. It's true that it's been eight months, but what, as a concrete matter, happened during that period that should affect whether we should send the non-instituted ground back to the board? It's not like they filed a brief after April 24th and omitted it from that, or we didn't have oral argument or anything like that. I'm having a little trouble seeing why a very long period of time, nevertheless, I mean, should actually affect whether we send it back. I understand, Your Honor, but I would try to flip that. For what reason should we give LG a handicap in this instance? This is their issue. They surely knew about SAS. They could have brought it up early. What has happened during that timeframe? Well, the parties have invested the time and resources to prepare for this hearing. By the time that you are considering this motion, this whole case will have been taken under submission. There is a cost in time. There is a cost in resources, and everyone has been dedicated their attention to preparing for this. Now, the other question to ask is, why didn't LG bring this up earlier? They haven't provided a single explanation for why they didn't. They could have brought it up eight months ago. They chose to bring it up at the end of last week. Can I, I think I didn't, in fact, I know I don't quite fully understand something you said earlier, I think in response to Judge O'Malley about whether you need to win both cases. If there's an affirmance on Blanchard here and an affirmance in the Apple case, do you have a stake? I thought you said in that event, you don't actually have a stake in whether the remaining claims, namely the ones only in this IPR, in these IPRs and not in the Apple IPRs, survivable? Your Honor, I believe that's correct because I don't believe the claims that would survive if you did affirm the PTAB's decision in the Apple case were actually asserted. So does that hopefully answer your question? Well, you have a stake in the sense that it's your patent, right? That's true, Your Honor, but in the sense of the actual case against LG, there would be nothing to proceed on if you were to affirm that decision in the Apple appeal. Do you have a closing comment, counsel? Your Honor, two closing comments, really, and it goes to the claim construction and the substantial evidence issue. The claim construction in this case is, that's a known quantity. Everyone knows it's going to happen. The fact that they disagree with the result doesn't give them the opportunity to have a redo. They knew claim construction was going to happen. Second, on substantial evidence, there was plenty to support the board's decision. The fact that they're trying to come up with new arguments on appeal doesn't work. And finally, on the question of remand, I would just point out, Your Honor, that they haven't filed a motion to remand based on SAS. What they filed was a notice of supplemental authority with a somewhat conditional, maybe timid, request if they lose this appeal. It shouldn't be recognized. It's untimely. They haven't explained why they didn't do so, and it would prejudice us, and it's probably futile. Thank you, Your Honors. Thank you, counsel. Mr. Morris has some rebuttal time. Thank you, Your Honors. Let's start with the SAS issue, because I have to say that I think your friend on the other side has a very good argument. Eight months is a long time. You all have been fighting this battle for a long time. You knew that you were fighting this. You knew that you had the district court case. You've gotten a decision from us in the district court case. Why didn't you do anything in the eight-month interim period? Every other party that had an SAS issue raised it right away as soon as the Supreme Court decision came down. To be clear, our view is that if the court affirms in the Apple case, which it should do. Our view is you should. There's nothing to be done on that issue. That's it. There's no reason to send it back. There's no reason for a remand for us to consider Oshnaro. That gets rid of it all. So the letter was a filing just to make clear our view on that issue. Even the dependent claims that were not asserted in the Apple case. Yes. You can just ignore those? OK. Yeah. Our view is that the court can and should affirm in Apple, and that will dispose of the issue entirely. Turning back to a few points my colleague made, with respect to whether or not the new construction, et cetera, it has been our position throughout that the limited list is confined to what is displayed. At Appendix 70, our petition laid out specifically that the individual windows in Blanchard, and what we're talking about is the 320 window, was the limited list, because it didn't have functionality going beyond that. But how can you now argue that your definition of plain and ordinary meaning is different from what your own expert testified to what the plain and ordinary meaning was? But the board's. Your petition was, as the board said, about as conclusory as you could get. And your presentations were about as conclusory as you could get. So then you've got an expert who says, this is what plain and ordinary meaning is. Why aren't you bound by that? But his plain and ordinary meaning was always on the notion of displayed. Even the quotation, the block quotation that the board pulls out of his deposition testimony says that there is one functionality displayed, and there is additional ones. And with regard to what's on page 3211 of the appendix, it says that because not all functionality is in one window of Blanchard. Again, it's the one window. And the board then changed what it viewed as a window, but that didn't change the expert's view of what that meant. So it's anachronistic to look back based on what happened in the final written decision and how the board resolved some issues and say, you've now conceded those points, when all throughout our view has been that each of the windows in Blanchard, 320, not 320 through 324, but 320 is the application summary window that displays a limited list. That's been our view throughout. We have not tried to expand on that. So it's not a new argument or a new construction. That has been our consistent position throughout. Now, it's just that the board adopted a claim construction and then made certain other findings. And that has led to, again, as I say, an anachronistic view of how you look at the evidence. But if you take our position from the beginning, that has been our position. And that is the position that we still have. That is consistent throughout. That's our view of how Blanchard works. With respect to a few other points that my colleague made, the Contacts Manager and the Bluetooth discussions in the specification in no way suggest that the limited list is long or extensive or it has additional things. It merely indicates that, in fact, there are finite lists that might occur. So in the contacts example, it says if you're in the calendar and you look up the contacts, it might give you certain information about the person in there. So like the contact information. Or if you're in the contacts information and you pull up the phone, it says it might give you the last dialed number or it might give you a missed call. In no way does it suggest that it can't be displayed on one screen or that somehow it's so extensive that it can't be displayed. Well, what about the several references to scrolling, columns three and column four, in particular, that I think Mr. Wayne? Right, none of those. To be fair, there are aspects about scrolling, but none of them suggest that the limited list, that those expand the limited list or that it goes beyond displaying the information. In fact, claim 14, which they look at, it says that the limited list, and then you can't scroll to reveal additional information. That suggests that you're now off into a different world outside of the limited list. That is, you're scrolling beyond it to reveal a different set of functionality or data or some other kind of list. Not that the limited list goes on and on and on. All of the, everything that talks about the limited list and what it's about is about displaying information. What about the fact that the spec itself specifically says that the summary does not have to be presented within any kind of frame? Agreed, and that's about graphically showing what it is that's around it. So it doesn't have to have any graphical information to set it off, but that doesn't suggest that the limited list goes beyond what's on the display screen. Again, claim, I think, 16 is the strongest indicator where it talks about the program, and it says that on a, you know, displayed on a screen, the summary, the menu is displayed on a screen, the application summary is displayed on the screen, and the application summary window displays the limited list of information. Everything is about displaying the information on the screen, not that you would scroll beyond that and still be within the realm of the limited list. Unless there are any further questions, we ask the Court to vacate and remand. Thank you, counsel. We'll take the case under revising. Thank you.